This appeal is from a summary judgment for the defendants in a wrongful death action against the decedent's employer and five of his co-employees. Gregory Glenn Landers ("Greg") was killed when a mechanized drum in which he was working started turning. Greg's father, Ray Landers ("Landers"), brought this action as administrator and personal representative of Greg's estate. The evidence indicated that an electrical short caused the drum to start, but Landers argues that "willful conduct," as defined in Ala. Code 1975, § 25-5-11(c), by the five co-employee defendants, or some of them, proximately caused Greg's death. Landers also argues that the failure of the Alabama Workmen's Compensation Act to provide a remedy for the death of an employee with no dependents, such as Greg, is unconstitutional under § 13 of the Alabama Constitution and *Page 926 
the equal protection clause of the 14th Amendment to the United States Constitution, and that, thus, there should be no bar to his action against his employer.
Landers contends that the application of the exclusive remedy provisions of the Workmen's Compensation Act, Ala. Code 1975, §§ 25-5-52 and -53, to his action against his employer, O'Neal Steel, Inc., is unconstitutional. He points out that the only compensation available to the estate of an employee with no dependents is $1000 in burial expenses, see § 25-5-67, whereas, if an employee is only injured or dies leaving dependents, far more compensation is available. The defendants answer that Landers did not raise this issue at trial and did not serve the attorney general with notice, pursuant to Ala. Code 1975, §6-6-227, that he was challenging the constitutionality of a state statute.
When O'Neal Steel and the co-employee defendants supported their motions for summary judgment with prima facie showings that they were protected by the exclusive remedy provisions of the Workmen's Compensation Act and were entitled to a judgment as a matter of law, the burden shifted to Landers to rebut those showings. Horner v. First Nat'l Bank of Mobile,473 So.2d 1025 (Ala. 1985). At that stage, it became incumbent upon Landers to raise the argument he now asserts. Because he did not do so, the trial court was not presented with any basis on which to deny O'Neal Steel's motion for summary judgment. Therefore, the court did not err in entering the summary judgment for O'Neal Steel. This Court will not review an issue raised for the first time on appeal. Kemp Motor Sales, Inc. v.Lawrenz, 505 So.2d 377 (Ala. 1987); Green v. Taylor,437 So.2d 1259 (Ala. 1983).
Furthermore, Landers did not serve the attorney general with notice of his challenge to the constitutionality of the exclusivity provision as applied to his action. Landers argues that § 6-6-227 applies only to declaratory judgment actions, but that contention has been answered in cases such as FairhopeSingle Tax Corp. v. Rezner, 527 So.2d 1232 (Ala. 1987); Wallacev. State, 507 So.2d 466 (Ala. 1987); and Barger v. Barger,410 So.2d 17 (Ala. 1982). After the defendants raised this defense in their appellees' brief, Landers notified the attorney general of the constitutional challenge and served copies of the briefs on the attorney general. The attorney general has filed a motion to strike the constitutional challenge. That motion is due to be granted.
Resolution of the claims against the co-employees requires that we set forth the facts regarding the machine in which Greg was killed. O'Neal Steel designed and constructed the machine for use in its plant. The drum was five feet long and three feet in diameter. It was mounted horizontally and was used for polishing fabricated steel pieces. As the drum turned, rough pieces of slag would be knocked off the steel pieces as they tumbled against each other; the machine was called the "deslagger." The steel pieces were put into and removed from the drum by hand through a door midway along the side of the drum.
The entire drum mechanism was covered by a wooden sound insulating box seven and one-half feet long and five feet high. There were two doors in the box, one on the side for access to the loading door and the other on the end for access to the motor and drive mechanism at one end of the drum. Safety switches were installed in the openings of both of these doors to prevent the motor from operating with either door open. The safety switch on the end door had been taped down, however, so as to allow access to the motor and drive chain while they were in operation. On the outside of the box there was an on/off switch and a timer, both of which had to be engaged for the drum to turn.
The evidence presented on the summary judgment motions indicated that the doorway of the drum was accessible through the door in the box only if the drum stopped rotating with the two doors aligned. Thus, if the drum stopped in any other position, it was necessary to restart it briefly to align the doors. Landers insists that the design of the deslagger was defective because the alignment process could be *Page 927 
accomplished only by pressing the safety switch with the door open and watching until the drum door turned into position. He asserts that this design amounts to "willful conduct" within the meaning of § 25-5-11(c), as we shall discuss below. The defendants counter with an argument that the operator did not have to bypass the safety switch, but could simply close the door in the box, engage the drum briefly, open the door to see if the drum door was aligned, and repeat the process until the drum stopped in the right position.
Greg was not killed while trying to align the doors, however. In fact, he had almost finished unloading the drum. To reach the last few pieces of steel, it was necessary for him to extend his head and shoulders into the drum until he could reach the ends. While he was thus inside the drum, it started turning and crushed him. An inspector with the Occupational Safety and Health Administration examined the site to determine the cause of the accident and concluded that a wire had rubbed against the drum until its insulation was worn away and that, at the moment of Greg's accident, it had created a short circuit and engaged the motor. Expert testimony offered by Landers also tended to establish these facts.
Other employees of O'Neal Steel gave depositions or affidavits indicating that the drum would sometimes operate by pressing the safety switch even if the timer was at zero and the on/off switch was off. There was even evidence that the machine occasionally started and ran briefly with no one around it. One employee stated that he had reported that fact to a foreman, not one of the defendants, but that the foreman had done nothing. That evidence was consistent with the conclusions of the experts that the drum started because of a short circuit in the frayed wiring.
Actions against coemployees for injuries or death in circumstances covered by the Workmen's Compensation Act may be brought "only for willful conduct which results in or proximately causes the injury or death." § 25-5-11(a); see also § 25-5-11(b). Section 25-5-11(c) provides, in pertinent part:
"(c) As used herein, 'willful conduct' means:
 "(1) A purpose or intent or design to injure another; and where a person, with knowledge of the danger or peril to another consciously pursues a course of conduct with a design, intent and purpose of inflicting injury, then he is guilty of 'willful conduct.'
 "(2) The willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from such removal; provided, however, removal of such a guard or device shall not be willful conduct unless such removal did, in fact, increase the danger of use of the machine and was not done for the purpose of repair of the machine or was not part of an improvement or modification of the machine which rendered the safety device unnecessary or ineffective."
Landers argues first that the design of the drum, including the necessity of turning it with the door open, rendered the machine so dangerous that the definition of "willful conduct" in (c)(1) is satisfied. He cites the test announced in Reed v.Brunson, 527 So.2d 102, 120 (Ala. 1988), regarding the standard of proof under § 25-5-11(c)(1), in particular the part of the test allowing a showing of "willful conduct" by evidence tending to show "that a reasonable man in the position of the defendant would have known that a particular result (i.e., injury or death) was substantially certain to follow from his actions." The evidence submitted in this case would support at most a finding of wantonness, however, and recovery for wantonness is not permitted under either the specific language of § 25-5-11(c)(1) or the test set forth in Reed v. Brunson.
The full quotation from which the extract above was taken reads:
 "[T]he Legislature sought to insure that these kinds of cases would not be submitted to a jury without at least some evidence tending to show either (1) the reason why the co-employee defendant *Page 928 
would want to intentionally injure the plaintiff, or someone else, or 2) [the test quoted above]. (A purpose, intent, or design to injure another was not intended to be reasonably inferable from evidence showing only knowledge and appreciation of a risk of injury or death short of substantial certainty that injury or death would occur.)"
Id. (emphasis in original).
The evidence that the wiring was not installed properly so as to prevent its coming into contact with the drum, fraying, and causing a short circuit, is certainly evidence of negligence and possibly of wantonness, but it is not evidence of a purpose, intent, or design to injure any person. Similarly, the evidence tending to show that the machine had started because of the short circuit on some occasions before it caused Greg's death is not sufficient to show such a purpose, intent, or design. There is no evidence that any of the five co-employee defendants were even informed of those occasions, much less any evidence that their failure to discover the frayed wire and have it repaired and made safe amounted to "willful conduct" within the meaning of § 25-5-11(c)(1).
Landers also argues that the taping shut of the safety switch on the end door, and possibly also the designed-in necessity of opening the side door and using its safety switch to align the drum, amount to a removal of a safety device so as to constitute "willful conduct" within the meaning of §25-5-11(c)(2). Even if those assertions were accepted as true, they could not provide a ground for reversal, because the safety switches were not the proximate cause of the accident. See Reed v. Brunson, supra; cf. Bailey v. Hogg, 547 So.2d 498
(Ala. 1989). There is no evidence that the machine started because the switch in the side door was pushed, and there is substantial evidence to the contrary. A co-worker of Greg's was close by when the drum started, and he stated that no one touched the safety switch. There was conflicting evidence as to whether the end door was open or closed. If it was closed, the taping of its safety switch made no difference. Even if it was open, the taping of the switch could not have been the proximate cause of the accident. For one thing, Greg could not have been relying on the open end door to prevent the machine from starting; the open side door, through which he was working, should have done that. Moreover, the evidence indicates that the short circuit would have bypassed the end door's safety switch even if it had not been taped, because the short circuit bypassed the side door's safety switch, the on/off switch, and the timer. The failure to design the electrical system to prevent such a short circuit cannot, under the circumstances, amount to "willful conduct."
In short, the evidence submitted on the summary judgment motion establishes as a matter of law that Greg's death was not caused by any "willful conduct" within the meaning of §25-5-11(c). Thus, under the clear terms of the statute, this action against Greg's co-employees is barred. As we explained above, the constitutional challenges to the bar prohibiting an action against Greg's employer, O'Neal Steel, were not preserved for review. The attorney general's motion to strike the constitutional challenges is granted. The judgment is affirmed.
MOTION GRANTED; AFFIRMED.
All of the Justices concur.