STUART, Justice.
This Court issued a writ of certiorari to consider whether the Court of Civil Appeals erred in reversing in part the Mobile Probate Court’s judgment on partial findings denying D.W.’s adoption contest on the basis that no common-law marriage existed and reversing the probate court’s judgment granting the petition of J.W.B. and J.J.B. (“the. adoptive parents”) to adopt B.W.B. (“the. child”). See D.W. v. J.W.B., 230 So.3d 763 (Ala.Civ.App.2015). We reverse and remand.
Facts and Procedural History
D.W. and J.B. were married Qn January 25, 2011. D.W. and J.B. were divorced on June 14, 2012. The testimony at trial indicated that the child was conceived in late September or early October 2012. The child was born on June 17, 2013. J.B. did not disclose the identity of the child’s biological father .at delivery. D.W. did not register his intent to claim paternity of the child, pursuant to the Alabama Putative Father Registry Act, see § 26-10C-1 et seq., Ala.Code .1975 (“the PFRA”). Immediately after the birth of the child, J.B. placed the child for adoption.
On June 19, 2013, the adoptive parents filed a petition in the probate court seeking to adopt the child. In the petition the adoptive parents identified J.B. as the biological mother of the child and indicated that the biological father’s name was unknown. Subsequent to the filing of the petition, the adoptive parents informed the probate court that J.B. and D.W. had applied for a marriage license a few months before the child’s birth and that “[t]he natural mother’s ex-husband [D.W.] will need to be served with a petitioner’s notice of hearing because there is concern that [D.W. and J.B.] may have [been] married” when the child was born. On August 16, *785 2013, D.W. moved to contest the adoption. In his motion, D.W. stated:
“At the end of July 2013, [D.W.] was informed by counsel Donna Ames the child was to be placed for adoption.
“[D.W.] is a presumed father [because] § 26-10A-7(aj(3), [Ala.Code 1975,] states:
• “ ‘[Consent is required of 't]he adop-tee’s presumed father, regardless of paternity, if:
‘“a. He and the adoptee’s mother are or have been married to each other and the adoptee was born during the marriage or . within 300 days after the marriage was terminated by death, annulment, declaration of invalidity, or divorce, or after a decree of separation was entered by a court or
“ ‘b. Before the adoptee’s birth, he and the adoptee’s mother have attempted to marry each other by a marriage solemnized in apparent compliance with the law, although the -attempted marriage is or could be declared invalid, and,
“‘1. If the attempted marriage could be declared invalid only by a court order, the adoptee was born during the attempted marriage or within 300 days after its termination by death, annulment, declaration of invalidity, or divorce; or,
“ ‘2. If the attempted marriage is invalid without a court order, the adoptee was born within 300 days after the termination of cohabitation.’
., , “[D.W.] is presumed the father whether a common law marriage is determined or not.
“§ 26-10A-7 requires, the .father’s consent or his relinquishment. Neither is given .by [D.W.].
“[D.W.] never abandoned the child as defined in § 26-10[A]~9[1]. because he provided support during the course of the pregnancy and left Mobile to work after being informed the child was dead.
“[D.W.] is entitled to notice under § 26-10A-7 as the father is known under § 26-10A-17.[2]”
On October 8, 2013, the probate court conducted a pretrial conference with the parties to discuss D.W.’s motion to contest the adoption'. On October 10, 2013, the probate court entered an order scheduling discovery. The order also identified the triable issues:
“A. Whether or not D.W. has standing to file the contest to the adoption of [the child].
“B. Whether or not D.W. is a ‘presumed father’ for purposes of the Alabama Adoption Code.”
The order also stated that “[t]he court will reconsider any portion of this order upon timely application of. any■ party.” The; record does not include any filings asking the probate court to reconsider its October 10, 2013, order.
On December 17, 2013, the adoptive parents moved to dismiss DW.’s adoption contest on the ground that he had failed to register'pursuant to the PFRA before or within 30 days of the’ child’s birth. See *786 § 26-10C-1(i), Ala.Code 1975. The adoptive parents argued that D.W.’s failure to register constituted an irrevocable implied consent to the adoption. On January 14, 2014, D.W. filed his response to the adoptive parents’ motion to dismiss his contest to the' adoption. In his response, D.W. argued that, because he is the child’s presumed father/ h¿ was entitled to notice. On February 17, 2014, the probate court denied the adoptive parents’ motion to dismiss.
On July 3, 2014, the adoptive parents moved for a summary judgment.. In their amended motion filed on July 8, 2014, the adoptive parents argued that because, they said, no facts would give rise to any reasonable question as to whether there had been a common-law marriage, they were entitled to.a summary judgment in their favor on the issue whether a common-law marriage existed between D.W. and J.B. so as to make D.W. the presumed father of the child and that- the adoption should be finalized. On July 15, 2014, D.W. responded,-to the adoptive parents’ motion for a summary judgment, arguing that genuine issues of material fact existed as to whether a common-law marriage existed between him and J.B. Specifically, he argued:
“It" is undisputed'that D.W. and [J.B.] were subsequently intimate after the divorce and conceived [the child] together. D.W. asserts and provides substantial evidence that the two reconciled and became husband and wife again.”
On July 25, 2014, the probate court conducted a hearing on the adoptive parents’ amended summary-judgment motion and D.W.’s response. On July -28, 2014, the probate court entered an order, denying the motion for a summary judgment. Additionally, the order stated:
“The triable issues in this cause identified at this time:
“a. Whether D.W. is a ‘presumed father’ for purposes of the Alabama Adoption Code, which centers on whether D.W. was the common law spouse of [J.B.], the birth mother, at the time of the birth of [the child].
“b. Whether dr not D.W. has standing to file the opposition to the adoption of [the child].
“c. Whether or not D.W. has impliedly consented to the proposed adoption.
“d. Whether the adoption of [the child] should be granted.”
The order also provided that “[t]he court will reconsider ■ any portion of this order upon timely application of any party.” The record does not contain any filings asking for the probate court to reconsider its July 28, 2014, order.
The probate court conducted the trial on October 14 and 15, 2014. Before the trial commenced, the following occurred:
“[The Court]: Okay. Before we proceed further, I want to make certain we’re clear on the procedure we’re going to follow.
“I think the primary issue—the first issue that needs to be addressed is whether or not [D.W.] was married to [J.B.] through a common law marriage. That’s the threshold issue that’s got to be determined by the Court.
“So I would think, and if you disagree I want you to speak up now, I’m going to let [D.W.] start out to prove—present evidence in support of that.
[Adoptive parents’ counsel]: He has the burden of proof. I agree.
THE COURT: Right. And then [the adoptive parents] will have the right to cross-examine and present anything in rebuttal to that. And then, [D.WJ’s going to have the right—well, not rebuttal *787 but present anything you want to present adverse to that.
“[Adoptive parents’ counsel]: Judge, defense.
“THE COURT: Right. Defense. And then, [D.W. has] a right of rebuttal.
“[Adoptive parents’ counsel]: That’s correct.
“THE COURT: And so we’re going to take up the common-law-spouse issue first.
“And then depending on that it will determine how we proceed as to the other issues that are outlined in the pretrial conference order in terms of the adoption case in chief?
“Are we clear?
“[Adoptive parents’ counsel]: Yeah, I hear you. I think so.
THE COURT: Okay. I just wanted to make certain we’re all on the same page before we .jump in the water and start swimming.
“All right. [D.W.’s counsel], are you ready to proceed?
“[D.W.’s counsel]: Yes, sir, Judge.” -
(Emphasis added.)
At trial conflicting testimony was presented as to whether D.W. and J.B. were involved in a common-law marriage in June 2013 when the child was born. Evidence was presented indicating that following the divorce D.W. and J.B. had lived together and that they were seen together at church, at softball games, and at family events; that D.W. and J.B., as a couple, had revealed the gender of the unborn child at one of D.W.’s softball games; that they had obtained a marriage license; that during the pregnancy J.B. had signed her married name [J.B.W.] on Medicaid forms; and that D.W. and J.B. had filed a joint tax return for 2012. Evidence was also presented indicating that D.W. had attended prenatal medical appointments with J.B., had made the insurance co-payments for some of those visits, had purchased items for the unborn child, had had a crib at his apartment,[3] and had cared for the mother during her pregnancy.
In contrast, evidence was presented indicating that J.B. had not resided with D.W. since their divorce, that she lived with her parents after the divorce, that she did not believe that she and D.W. had had a common-law marriage, that she and D.W. had not had consensual sexual intercourse since the divorce, and that she had no intent to remarry D.W.
The evidence established that D.W. was not present when the child was born. J.B. did not inform D.W, when labor began, and she registered anonymously at the hospital. It appears that a few days after the child’s birth J.B. informed D.W. that the child had lived for only a few minutes. According to D.W., J.B. gave him a death certificate, which turned out to be false, and he did not learn that the child was alive until the Department of Human Resources contacted him about the adoption proceedings.
During the trial, when D.W.’s counsel was questioning D.W.’s sister about D.W.’s conduct toward the unborn child and J.B. during J.B.’s pregnancy, the adoptive parents objected on hearsay grounds. D.W.’s counsel responded that the testimony was “offered to prove the common law marriage that [D.W.] said this and [J.B.] said this and they held this child out to be their own and [D.W.] supported this child.” The probate court sustained the objection. Throughout the trial, and especially during direct examination of J.B. by D.W.’s counsel, the probate court reminded D.W.’s counsel that the issue being tried was *788 whether a common-law marriage existed between D.W. and J.B.
Át the close of the'trial, the adoptive parents’ counsel moved for a judgment on partial findings, arguing that D.W. had failed to present sufficient evidence showing that a common-law marriage existed. During the argument of D.W.’s counsel that clear and convincing evidence was presented to establish the existence a common-law marriage; the following-occurred:
“[D.W.’s counsel]: And finally, Judge, I would reassert my constitutional arguments. Under the Fourteenth Amendment, any state statute—and if your ■Honor is inclined to grant [the adoptive parents’ motion for a judgment on partial findings]—
“[Adoptive parents’ counsel]: That’s not before you. I respectfully—I hate to interrupt. That is not before you today, that constitutional argument. We’re here about common-law marriage' ánd common-law marriage only. ■ '
“[D.W.’s counsel]: I’ve got to preserve this, Judge.
■“[Adoptive parents’ counsel]: I think it’s already in the record.
“[D.W.’s counsel]: Well, I’m just going to make .the argument, and Judge, you can take it under submission or you can deny.it. But I would like to make the argument that under the Fourteenth Amendment, under these facts where you have a father who has supported the mother and the child, has been a responsible father, even if Your Honor finds that he is not a common law spouse, to deprive him of his fundamental right of parentage would violate the Fourteenth Amendment, Due Process Clause. It would violate the Fourteenth Amendment, Privileges and Immunities Clause, as the—as the state statute would apply to the facts of this case, and also would violate the Fourteenth Amendment, Equal Protection Clause.
“Care, custody, and nurture .of a child first resides in the . parents. That’s Prince v. Massachusetts, 321 U.S. 158[, 64 S.Ct. 438, 88 L.Ed. 645] (1944).
“I specially point Your Honor to the Lehr case. That’s Lehr v. Robertson, 463 U.S. 248[, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983)]. In that case, the United States Supreme Court held that a natural,'unmarried father under certain circumstances is provided substantial protection under the Due Process Clause of the Fourteenth Amendment to contest the adoption of his biological child.
“The language of Lehr, the Court specifically held that when an unwed father demonstrates a full commitment to the responsibilities of parenthood by coming forward to participate in the rearing of his child, his interest and personal contact with the child acquires substantial protection under the Due Process Clause. And that’s not just procedural. We’re talking about substantive due process.
“In the Alabama casé—Alabama cases have adopted this as well, particularly in M.V.S. v. V.M.D., 776 So.2d 142 (Ala.Civ.App.1999). It says that in cases—such as this one—when a natural fath'er has established a substantial relationship with his child and has' demonstrated a full commitment to the responsibilities of parenthood by participating in the' rearing of his child—which [I] ... respectfully submit the evidence has been shown in this hearing today—that the relationship acquires, once again, substantial protection under the Due Process Clause of the Fourteenth Amendment to the United States.
[[Image here]]
*789 “[Adoptive parents’ counsel]: ' Your Honor, this is not before you today. It’s not in the order.
“THE COURT: This is not an issue before me.
“[D.W.’s counsel]: Well, I’d like to preserve this record, Judge. If you’re inclined to grant this motion, the case is over.
“THE COURT: Well, but that’s— these are not issues before me today.
“[D.W.’s counsel]: I have to raise it though to preserve it for the record.”
After D.W.’s counsel had concluded his argument, the probate court stated: ‘
“The issue before the Court is whether or not a common-law marriage existed between D.W. and J.B.
“I believe—Let me just go on and just note in the record, I believe the U.S. Supreme Court’s decision in Lehr [v. Robertson, 463 U.S. 248 (1983),] can be distinguished from the facts in this case,
“I do believe that and conclude that the D.W.’s equal protection rights, substantive and procedural due process rights of the Fourteenth Amendment have been and are adequately protected and have been properly addressed by this Court.
[[Image here]]
“I would further note that Alabama’s Adoption Code, and more specifically, the Putative Father Registry—Alabama’s Putative Father Registry Act has been challenged constitutionally a couple of times, and the Alabama Supreme Court'has held that it is constitutional and meets all federal and state constitutional requirements.
[[Image here]]
“In this case, I do not believe that the clear and convincing evidence standard has been met. And so I’m going to grant the motion for a judgment [on-partial findings]..
[[Image here]]
“THE COURT: But in any event, I’m granting the motion and I’m making the determination that there was no common-law marriage.
“At this point iñ time, because of my ruling, I find that D.W. does not have standing to contest the adoption.”
After D.W. had left the courtroom, the probate court continued the hearing and granted the adoptive parents’ petition to adopt the child.
On October 15, 2014, the probate court entered a .written judgment, holding that D.W. and J.B. were not married to each other during “any material: or relevant time” at issue and that D.W. lacked standing to contest the proposed adoption of the child because “D.W. was not the husband [of J.B.] or presumed father of the [child] and D.W. did not register” with the Alabama Putative Father Registry pursuant to the PFRA. DW. did not file any post-judgment motions in the probate court.
D.W. appealed the probate court’s judgment to the Court of Civil Appeals. In a plurality opinion, the Court of Civil Appeals affirmed the probate court’s judgment in part; reversed it in part; and remanded the case for further proceedings, D.W. v. J.W.B., supra. Specifically, the court .held that the evidence supported the probate court’s conclusion that D.W. was not married to J.B. by common law at any material time and that D.W. was not the presumed father of the child under § 26-10A-7(a)(3), Ala.Code 1975; that D.W. did not preserve his -argument in the probate court that he was a presumed father pursuant to § 26-10A-7(a)(3)d, Ala. Code 1975 (requiring consent to the adoption from the adoptee’s presumed father if “[h]e received the adoptee into his home *790 and openly held out the adoptee as his own child”); that D.W. did not preserve for appellate review his contention that J.B.’s misconduct following the child’s birth excused his failure to register pursuant to the PPRA; that D.W. preserved for appellate review his contention that
“he had demonstrated the requisite commitment to fatherhood before the birth of the child such that he retained a constitutional right to object to the adoption of the child by [the adoptive parents] regardless of the operation of the PFRA or the AAC [Alabama Adoption Code],”
D.W., 230 So.3d at 779; and that remand was required for the probate court to determine “whether [D.W.] had grasped his constitutionally protected ‘opportunity interest’ by his prebirth conduct toward [J.B.] and the child and his postbirth actions to protect his legal relationship with the child.” D.W., 230 So.3d at 781.
The adoptive parents petitioned this Court for certiorari review of the decision of the Court of Civil Appeals.
Standard of Review
“On certiorari review, this Court accords no presumption of correctness to the legal conclusions of the intermediate appellate court. Therefore, we must apply de novo the standard of review that was applicable in the Court of Civil Appeals.”
Ex parte Toyota Motor Corp., 684 So.2d 132, 135 (Ala.1996).
Analysis
The adoptive parents contend that the Court of Civil Appeals erred in holding that D.W. properly preserved his argument that his due-process rights were violated by the probate court’s refusal to consider his constitutional argument that his conduct toward J.B. and the unborn child during the pregnancy created a custodial right to object to the adoption of the child. Specifically, the adoptive parents argue that D.W.’s argument at trial was too vague and ambiguous to establish that he was asking the probate court to determine if
“he had demonstrated the requisite commitment to fatherhood before the birth of the child such that he retained a constitutional right to object to the adoption of the child by the [adoptive parents] regardless of the operation of the PFRA or AAC [Alabama Adoption Code].”
D.W., 230 So.3d at 779. We agree.
If a party makes a constitutional argument to the trial court before a decision in the case is rendered, the constitutional issue is preserved for appellate review. See Alabama Power Co. v. Capps, 519 So.2d 1328, 1330 (Ala.1988)(holding that if a party raises a constitutional issue “at the pleading stage, during the taking of the evidence, or even during the instructions to the jury, the trial court [is] presented with the constitutional arguments ..., and if it had accepted the argument, could have saved the time and expense of trial under the allegedly unconstitutional [statute]”). The critical consideration for the preservation of error regarding a constitutional issue for appellate review is whether the trial court was sufficiently informed of the basis of the party’s argument.
“In order for an appellate court to review a constitutional issue, that issue must have been raised by the appellant and presented to and reviewed by the trial court. HealthAmerica v. Menton, 551 So.2d 235 (Ala.1989); Marion v. Hall, 429 So.2d 937 (Ala.1983); Stephens v. Central of Georgia R.R., 367 So.2d 192 (Ala.1979). Additionally, in order to challenge the constitutionality of a stat *791 ute, an appellant must identify and make specific arguments regarding what specific rights it claims have been violated. Central Alabama Elec. Co-Op. v. Tapley [546 So.2d 371 (Ala.1989) ].”
Alabama Power Co. v. Turner, 575 So.2d 551, 553 (Ala.1991)(emphasis added). “Specific objections or motions are generally necessary before the ruling of the trial judge is subject to review, unless the ground is so obvious that the trial court’s failure to act constitutes prejudicial error.” Lawrence v. State, 409 So.2d 987, 989 (Ala.Crim.App.1982). See also Ex parte Works, 640 So.2d 1056, 1058 (Ala.1994)(recognizing that “[t]he purpose of requiring a specific objection to preserve an issue for appellate review is to put the trial judge on notice of the alleged error, giving an opportunity to correct it before the case is submitted to the jury”).
When D.W.’s objection based on constitutional grounds made at the close of the evidence is considered in light of the entire record and in context, we cannot agree with the Court of Civil Appeals that he properly preserved the issue for appellate review. Specifically, we cannot conclude that D.W. sufficiently informed the probate court of the basis of his argument to permit the probate court to understand and address his constitutional argument that
“he had demonstrated the requisite commitment to fatherhood before the birth of the .child such that he retained a constitutional right to object to the adoption of the child by the [adoptive parents] regardless of the operation of the PFRA or the AAC [Alabama Adoption Code].”
D.W., 230 So.3d at 779.
Although it is not determinative of the question of preservation, it is worthy of noting that the record does not contain any constitutional arguments made by D.W. before trial. The record does not contain any pleading filed by D.W. asking the probate court to address whether the Alabama Adoption Code, § 26-10A-1 et seq., Ala.Code 1975, and/or the PFRA is unconstitutional or whether the Alabama Adoption Code and/or the PFRA as applied to him is unconstitutional. The record does contain orders entered and statements made by the, probate court that consistently informed the parties of the issues the probate court considered relevant and that it was willing to reconsider its determination of relevant, issues upon a party’s request. In light of the probate court’s consistent communication of its understanding of the issues to be tried and of its willingness to reconsider those issues throughout the pretrial proceedings, D.W. had ample opportunity to develop and preserve his constitutional argument during the pretrial stage, but he chose not to do so.
■When D.W. did make his constitutional argument at the close of the evidence, he did not properly preserve his constitutional argument for appellate review because he did not make a specific argument that placed the probate court on notice, as the Court of Civil Appeals concluded, that he was objecting to the constitutionality of the Alabama Adoption Code and the PFRA as applied to him. A review of D.W.’s objection .indicates that,D.W. did not request with specificity that the probate court determine the constitutionality of any particular statute or determine whether a statute was unconstitutional as applied to him. The record reveals that D.W. argued the general proposition that the Constitution protects his right to be a parent and that, consequently, in light of his prebirth conduct toward the child, he should be permitted to contest the adoption of the child. Such a general argument, even with citations to various cases, did not place the probate court on notice of the constitution *792 al argument D.W.. made in the Court of Civil Appeals. For example, D.W. did not identify in his argument before the probate court the specific statute or statutes and/or sections he believed violated his constitutional rights. - D.W. did not explain why his constitutional argument did not require compliance with § 6-6-227, Ala. Code 1975.[4] See Landers v. O’Neal Steel, Inc., 564 So.2d 925, 926 (Ala.1990), and Dodd v. Burleson, 932 So.2d 912, 918 (Ala.Civ.App.2005). Indeed, in light of the clarity of the probate court’s statements throughout the proceedings identifying the triable issues presented and its understanding of those triable issues, it was imperative that D.W. make a specific argu-meht ’at the close of the evidence to adequately preserve any additional issues for appellate review. Thus, although D.W.’s counsel entered an objection at trial based on a constitutional violation, the objection did not adequately apprise the probate court of the issue D.W.. now raises on appeal and did not provide the probate court with an opportunity to address or correct any alleged error-before issuing its decision.[5] Because D.W. did not make a specific argument in the probate court about, the constitutionality of the PFRA and Alabama Adoption Code as applied to him, the Court of Civil Appeals 'erred in holding that D.W. properly preserved' his constitutional argument for appellate review.
Conclusion
Because the Court of Civil Appeals’ judgment rests on an issue that was not properly before it for appellate review, the judgment of the Court of Civil Appeals is reversed, and this case is remanded to that court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
MAIN, WISE, and BRYAN, JJ„ concur.
PARKER, MURDOCK, and SHAW, JJ., dissent.
BOLIN, J„ recuses himself.

. Section 26-10A-9, Ala.Code-1975, lists the acts of a parent that indicate implied consent or relinquishment.

. Section 26-10A-17, Ala.Code 1975, provides a list of individuals a petitioner must serve with a notice of pendency of the adoption proceedings. Section 26-10A-17(10) provides that notice must be given to '‘[t]he father and putative father of the adoptee if made known by the mother or otherwise known by the court unless the court .finds that the father or putative father has given implied consent to the adoption, as defined in Section 26-10A-9.”

. D.W. and J.B. also had had a son born on September 1, 2011, during their marriage.

. ■ Section 6-6-227, Ala,Code 1975, requires that the attorney general must be served with any pleading challenging the constitutionality of a statute.

. Justice Murdock in his dissent emphasizes the egregious facts presented in this case, Indeed, the facts in this case are troubling. We, however, are mindful that the evidence was presented ore tenus and that the probate court had the benefit of observing the manner and demeanor of the witnesses and had the better opportunity to assess the truthfulness of their testimony. Ex parte J.W.B., 933 So.2d 1081, 1087 (Ala.2005). Moreover, the egregious nature of the facts does not negate D.W.’s failure to properly preserve in the probate court the argument he made to the Court of Civil Appeals. Throughout the proceedings, the probate court provided D.W. with numerous chances to define and develop the issues he perceived to be relevant. D.W. agreed to the issues to be tried. Only at the close of the evidence did D.W, make a general constitutional objection, and that objection did not adequately develop with specificity the "opportunity-interest argument” that provided the basis for the Court of Civil Appeals’ reversal of the probate court's judgment.