Rel: January 13, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2022-2023

_____

## 2210366

_____

## P.F.-T.

## v.

## M.T.

## Appeal from Montgomery Circuit Court
## (DR-21-900034)

PER CURIAM.

This appeal involves issues of child custody arising from the dissolution of a same-sex marriage. P.F.-T. ("the spouse") appeals from a divorce judgment entered by the Montgomery Circuit Court ("the trial court") divorcing her from M.T. ("the mother") and denying her an award

of custody of M.A.T., the mother's child ("the child"), born in March 2013. We affirm.

## Procedural History

In January 2021, the mother filed a petition requesting that the trial court divorce the parties based on incompatibility of temperament. The spouse filed an answer to the mother's divorce petition in which she addressed the mother's allegations and alleged that the child had been intended to be the child of both parties. After the mother filed an amended divorce petition, the spouse filed an amended answer and a counterclaim for a divorce in which, among other things, she sought an award of custody of the child.

The trial court held a trial in November 2021, and the parties submitted briefs for the trial court's consideration. In December 2021, the trial court entered a judgment that, in pertinent part, divorced the parties based on incompatibility of temperament and denied the spouse's request for custody of the child. The spouse timely filed a notice of appeal.

## Facts

The parties began a romantic relationship in 2008. The mother, who was then a member of the armed services of the United States, was

deployed to Iraq in 2009; when she returned in 2010, she and the spouse began residing together in North Carolina. The mother testified that she had been attempting to conceive a child before meeting the spouse. When she became romantically involved with the spouse, the mother testified that she had no intent of sharing a child with anybody because, she said, she "didn't need anybody to help [her] raise that child; [she] just wanted a child." The mother further testified that the spouse had "c[o]me along at the beginning" when "[the mother] [was] trying to have a child, and it was nice …."

The spouse testified that she and the mother began looking for sperm banks and registered sperm donors together but found that process to be very expensive. She and the mother testified that the mother had tried unsuccessfully to become pregnant with one individual before the beginning of her relationship with the spouse. After they began their relationship, the mother and the spouse invited a male acquaintance to move into their residence and impregnate the mother, but the mother's attempts at becoming pregnant with that male friend were also unsuccessful. Another friend of the mother, J.B., offered to help her get pregnant. With the spouse's consent, the mother accepted J.B.'s

offer and had sexual intercourse with him and became pregnant. The spouse testified that she had had no issue with the mother's having sexual intercourse with J.B., because, she said, she wanted to have a child with the mother and to be a family together.

During the mother's pregnancy, the spouse attended doctor's appointments and prenatal classes with the mother, the parties had a baby shower, and the parties participated in a maternity photo shoot. In March 2013, the mother gave birth to the child and the spouse was present. The spouse's name was not put on the birth certificate at that time, nor was it subsequently added.

In July 2014, the parties were married in the District of Columbia because that jurisdiction was one of few in the United States that then allowed same-sex marriage. The mother testified that, if she had been allowed, she might have married the spouse sooner. After giving birth to the child, the mother returned to work while the spouse, who was not working at the time, stayed at home and took care of the child. The child referred to the mother as "mommy" and to the spouse as "other mommy." The mother testified that the spouse was listed as the child's guardian in school and medical records because, she testified, there was only one

4

space for "mother." According to her testimony, the mother believes that child views the spouse as a parent and considers the spouse's family as his family.

In 2016, the spouse left the marital residence in North Carolina and went to Alabama to take care of her mother. That same year, the mother and the child followed the spouse to Alabama. The parties and the child lived together in Alabama until the parties separated in 2019. The spouse moved in with a man, B.W.M., and became pregnant with B.W.M.'s child. When asked about this at trial, the spouse testified that she did not consider this adultery even though it occurred during the parties' marriage because, she stated, the parties had been in an "open relationship."

After the parties' separation, the spouse would spend time with the child at the mother and child's residence in Alabama and care for the child every other weekend. The mother testified that she was angry at the spouse and did not want the child to spend time with the spouse. Her anger, she said, arose from the spouse leaving her to be with B.W.M. after the mother would not agree to an arrangement whereby the spouse would become pregnant with B.W.M.'s child and have him serve as a father

figure to the spouse's child. The spouse testified that she had regularly spent time with the child until the child turned seven years old, which is when the mother began prohibiting the spouse from visiting with the child.

<u>Analysis</u>

On appeal, the spouse contends that the trial court erred when it refused to consider her a presumptive parent of the child and award her custody of or visitation with the child. She argues that the presumptions of paternity set forth in § 26-17-204, Ala. Code 1975, as part of the Alabama Uniform Parentage Act ("the AUPA"), § 26-17-101 et seq., Ala. Code 1975, should extend to women same-sex and marriages. That section provides, in pertinent part:

"A man is presumed to be the father of a child if

"…

"(5) while the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child or otherwise openly holds out the child as his natural child and establishes a significant parental relationship with the child by providing emotional and financial support for the child."

§ 26-17-204(a)(5), Ala. Code 1975.

The spouse concedes that § 26-17-204, on its face, does not apply to her because she is a woman who was in a same-sex marriage, noting in her appellate brief that, "because Alabama has not extended this presumption [of paternity] to apply to same-sex couples, [the spouse] has no legal rights to her child." She further acknowledges that "[n]o specification is made within [§ 26-17-204] to children born to same-sex couples, who conceive a child within their relationship, subsequently marry, and where a female holds the child out as her own [and] establishes a significant parental relationship with the child by providing emotional and financial support for the child." However, she argues that, in light of Obergefell v. Hodges, 576 U.S. 644 (2015), § 26-17-204 is unconstitutional because it does not apply to women in same-sex marriages and should be judicially amended to extend a presumption of maternity to her. We cannot reach this argument because we conclude that she failed to preserve the argument for appeal.

It is axiomatic that "[t]his Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court." Andrews v. Merritt Oil Co., 612 So. 2d 409, 410 (Ala. 1992). To preserve a challenge

to the constitutionality of a statute, an appellant must have specified to the trial court which statute he or she is challenging and have made specific arguments to the trial court explaining which constitutional rights the statute violates and how it violates them. See Ex parte J.W.B., 230 So. 3d 783, 790-92 (Ala. 2016). See also Alabama Power Co. v. Turner, 575 So. 2d 551, 553 (Ala. 1991) ("[T]o challenge the constitutionality of a statute, an appellant must identify and make specific arguments regarding what specific rights it claims have been violated.").

Our review of the record discloses that the spouse never argued to the trial court that § 26-17-204 is unconstitutional because it does not apply to women who are or were in same-sex marriages. Indeed, at no point, either before the trial, during the trial, or in a postjudgment filing did the spouse ever contend to the trial court that that section, which she acknowledges to this court bars, on its face, her attempt to be considered a presumed mother of the child, violates any provision of the United States Constitution, such as the Due Process Clause or the Equal Protection Clause, nor did she explain to the trial court how that section violated any constitutional provision. As a result, we conclude that the spouse has not preserved for appeal her contention that § 26-17-204 is

8

unconstitutional and should be judicially amended to extend a presumption of maternity to her.

The dissent focuses largely on § 26-17-106, Ala. Code 1975, a part of the AUPA, which provides that "provisions of [the AUPA] relating to determinations of paternity apply to determinations of maternity." The record does reflect that, in a brief to the trial court, the spouse argued that, pursuant to § 26-17-106, the trial court should apply § 26-17-204 in a gender-neutral manner to determine that she is a legal mother of the child. Although the dissent largely adopts this argument, it does so despite the fact that the spouse does not make that argument to this court on appeal. Indeed, in her appellate brief, the spouse fails to cite § 26-17-106, and she makes no argument that that statute requires a trial court that is making a determination of maternity to apply the presumptions set forth in § 26-17-204 in a gender-neutral manner. Instead, as discussed above, the spouse's brief to this court takes a different position -- acknowledging that § 26-17-204 does not apply to her and arguing that we must judicially expand the language of the statute to apply to her. In short, the dissent constructs an argument for the spouse that she does not make to this court, a practice in which this court is not permitted to

engage. See Avis Rent A Car Sys., Inc. v. Heilman, 876 So. 2d 1111, 1124 n.8 (Ala. 2003).

## Conclusion

Having failed to raise below the argument that she makes on appeal, and having failed to raise in this court the argument that she made below, we conclude that the spouse has failed to preserve the argument that she presses here. For this reason, we affirm the trial court's judgment.

AFFIRMED.

Moore, Edwards, and Fridy, JJ., concur.

Thompson, P.J., dissents, with opinion which Hanson, J., joins.

THOMPSON, Presiding Judge, dissenting.

I respectfully dissent.

According to the biological mother, M.T. ("the biological mother"), she and P.F.-T. ("the spouse") were in a romantic partnership when the child was conceived with J.B. The spouse testified that she had no issue with the biological mother having intercourse with J.B. because, she says, she wanted to raise a child with the biological mother and be a family together.

During the biological mother's pregnancy, the spouse attended doctor's appointments and prenatal classes with the biological mother, and they both participated in a baby shower and posed for a maternity photo shoot together. When the child was born in March 2013, the spouse was present for the birth. At the time of the child's birth, the couple could not be legally married in North Carolina, where they resided. The spouse's name was not placed on the child's birth certificate.

In July 2014, the couple traveled to the District of Columbia so that they could, as a same-sex couple, legally marry. After the child's birth, the spouse cared for the child while the biological mother worked. The child referred to the biological mother as "mommy" and the spouse as

"other mommy." The spouse took the child to doctor's appointments and attended the child's school events. According to her testimony, the biological mother believes that the child views the spouse as a parent and considers the spouse's family to be his family.

In 2016, the spouse moved to Alabama to take care of her mother. That same year the biological mother and the child followed the spouse to Alabama. They lived together as a family in Alabama until the couple separated in 2019.

After the separation, the spouse would spend time with the child at the marital residence in Alabama and care for the child every other weekend. The biological mother testified that she became angry with the spouse and did not want the child to spend time with the spouse. The spouse testified that she had regularly spent time with the child until the child turned seven years old, when the biological mother stopped allowing the spouse to visit with the child.

On January 22, 2021, the biological mother filed her complaint for a divorce from the spouse based on an incompatibility of temperament. In her divorce complaint, the biological mother stated that "there were no children born of the marriage."

In her initial answer to the divorce complaint, the spouse asserted that she and the biological mother were legally married on July 31, 2014, in Washington, D.C., and that they had separated in January 2019. She claimed that the child was born before the marriage but was intended to be the couple's child. She claimed that the child "called [her] 'mommy' as well."  After the biological mother amended her complaint, the spouse amended her answer, seeking an award of "physical and legal custody" of the child and an award of "specific custodial periods with the child."

Prior to the hearing in the divorce action, trial briefs were submitted by the parties on the issue of parentage. In her trial brief, the spouse argued that the provisions related to a determination of paternity under the Alabama Uniform Parentage Act ("the AUPA"), § 26-17-101 et seq., Ala. Code 1975, should apply equally to same-sex couples.  She also cited to numerous cases from other jurisdictions in which courts had applied the presumptions of paternity in their version of the Uniform Parentage Act ("UPA") to same-sex couples.  The spouse's trial brief also asserted that "[t]hough the [AUPA] does not specifically address children born of same-sex couples, it does address the determination of maternity,

stating that 'provisions of this chapter relating to determinations of paternity apply to determinations of maternity.'"

A trial was conducted during which the trial court heard testimony from the biological mother and the spouse. At the close of testimony, the trial judge stated:

> "I do find that when the child was conceived, it is the Court's opinion that he was conceived with the intention of you all being a family, of you all both mothering the child. And in that case, it is the court's belief that there should be some rights in terms of visitation and some child support and things like that, just like I normally would do with any other couple, because I see you all as any other couple."

The trial judge went on to say:

> "[O]ne of the most important things that I do is what's in the best interests of the child. And I believe that if the child grew up seeing [the spouse] as his mother and has formed a bond with her, it is in his best interests to continue that bond."

On December 23, 2021, the trial court entered a final judgment in the divorce action in which it found that "there is no authority to award custody or visitation in this case. The court sympathizes with the plight of the non-biological mother. However, the Court carefully reviewed the applicable law and there is no legal authority to award the non-biological mother custody rights."

On appeal the spouse argues, as she has done at every step of this litigation, that the presumption of paternity provision of the AUPA found in § 26-17-204, Ala. Code 1975, should be applied equally to same-sex couples, especially in light of the United States Supreme Court's decision in <u>Obergefell v. Hodges</u>, 576 U.S. 644 (2015), which legalized same-sex marriages throughout the country. The spouse argues that the trial court failed to provide same-sex couples the same rights as opposite-sex couples when it comes to determining parentage.

The principal function of the AUPA is to provide a procedure for establishing the paternity of a child. <u>See</u> <u>Ritter v. State</u>, 494 So. 2d 76 (Ala. Civ. App. 1986). The ultimate objective of the AUPA is to "promote full equality for all children." <u>Ex parte Presse</u>, 554 So. 2d 406, 411 (Ala. 1989). "A child born to parents who are not married to each other has the same rights under the law as a child born to parents who are married to each other." § 26-17-202, Ala. Code 1975.

Under the AUPA, our presumption of paternity states that there are six ways in which "a man is presumed to be the father of a child." § 26-17-204(a), Ala. Code 1975.[1]

---

[1]Section 26-17-204, Ala. Code 1975, entitled "Presumption of paternity," provides:

"(a) A man is presumed to be the father of a child if:

"(1) he and the mother of the child are married to each other and the child is born during the marriage;

"(2) he and the mother of the child were married to each other and the child is born within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce;

"(3) before the birth of the child, he and the mother of the child married each other in apparent compliance with law, even if the attempted marriage is or could be declared invalid, and the child is born during the invalid marriage or within 300 days after its termination by death, annulment, declaration of invalidity, or divorce;

"(4) after the child's birth, he and the child's mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with the law although the attempted marriage is or could be declared invalid, and:

"(A) he has acknowledged his paternity of the child in writing, such writing being filed with the appropriate court or the Alabama Office of Vital Statistics; or

"(B) with his consent, he is named as the child's father on the child's birth certificate; or

"(C) he is otherwise obligated to support the child either under a written voluntary promise or by court order;

"(5) while the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child or otherwise openly holds out the child as his natural child and establishes a significant parental relationship with the child by providing emotional and financial support for the child; or

"(6) he legitimated the child in accordance with Chapter 11 of Title 26.

"(b) A presumption of paternity established under this section may be rebutted only by an adjudication under Article 6 [of the AUPA]. In the event two or more conflicting presumptions arise, that which is founded upon the weightier considerations of public policy and logic, as evidenced by the facts, shall control. The presumption of paternity is rebutted by a court decree establishing paternity of the child by another man."

17

The AUPA also specifically states in § 26-17-106, Ala. Code 1975, that the "provisions of this chapter relating to determinations of paternity apply to determinations of maternity." Pursuant to § 26-17-201(a) of the AUPA, the mother-child relationship may be established by giving birth, see § 26-17-201(a)(1), by adoption, see § 26-17-201(a)(3), or by an adjudication of maternity, see § 26-17-201(a)(2).

"[J]ust as statutes dealing with the same subject are in pari materia …, parts of the same statute are in pari materia and each part is entitled to equal weight." Darks Dairy, Inc. v. Alabama Dairy Comm'n, 367 So. 2d 1378, 1381 (Ala. 1979). "Statutes should be construed together so as to harmonize the provisions as far as practical." Ex parte Jones Mfg. Co., 589 So. 2d 208, 211 (Ala. 1991)(citing Siegelman v. Folmar, 432 So. 2d 1246 (Ala. 1983)). "Because the meaning of statutory language depends on context, a statute is to be read as a whole." Ex parte Jackson, 614 So. 2d 405, 406 (Ala. 1993). A statute is presumed to have been enacted with a "meaningful purpose." Adams v. Mathis, 350 So. 2d 381, 386 (Ala. 1977). "The legislature will not be presumed to have done a futile thing in enacting a statute." Ex parte Watley, 708 So. 2d 890, 892 (Ala. 1997).

Other state courts, when interpreting presumption-of-paternity statutes that are worded similarly to our presumption-of-paternity statute, i.e., statutes that concentrate on questions of paternity rather than maternity, have construed those statutes in a gender-neutral manner. See In re D.A.A.-B., [No. 08-21-00058-CV, Aug. 20, 2022] ___ S.W.3d ___, ___ (Tex. App. 2022)(holding that the former wife of the birth mother of the child was presumed parent of that child); Treto v. Treto, 622 S.W.3d 397 (Tex. App. 2020)(affirming trial court's judgment holding that the same-sex spouse of mother was child's parent and ordering the spouse to pay child support); Chatterjee v. King, 280 P.3d 283 (N.M. 2012) (holding that the fact that former partner was not child's biological child or adoptive mother did not preclude former partner from establishing that she was the child's "natural mother"); Elisa B. v. Superior Court of El Dorado Cnty., 37 Cal. 4th 108, 117 P.3d 660 (2005) (holding that a child may have two parents, both of whom are women); and In re Karen C., 101 Cal. App. 4th 932, 124 Cal. Rptr. 2d 677 (2002) (holding that a woman involved in a same-sex relationship who holds out a child as her own can be adjudicated the mother of the child). The spouse, in her brief on appeal, directs this court to McLaughlin v. Jones,

243 Ariz. 29, 401 P.3d 492 (2017); <u>Wendy G-M v. Erin G-M</u>., 45 Misc. 3d 574, 985 N.Y.S.2d 845 (N.Y. Sup. Ct. 2014); and <u>Hunter v. Rose</u>, 463 Mass. 488, 975 N.E. 2d 857 (2012), as examples of courts extending their state's paternity presumption to same-sex couples who conceived a child through assisted reproduction.

My research has revealed no other court of any other state that has interpreted the gender-neutrality provision of the UPA to the contrary of those authorities cited. Section 26-17-901 of the AUPA states: "In applying and construing this uniform act, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it."

To promote the uniformity of the statute and to find a "meaningful purpose," <u>see</u> <u>Adams</u>, 350 So. 2d at 386, on the part of our legislature in enacting the statute, § 26-17-106 should be given its full measure of operation. The result of applying the provision found in § 26-17-106 to the language of § 26-17-204 is to make that section gender neutral. Section 26-17-106 provides ample authority for the trial court to have determined the maternity of the child in this case. Because the trial court stated in its final judgment that there was "no legal authority to award

the non-biological mother custody rights[,]" I would reverse the trial court's judgment as to that finding and remand this case to the trial court to apply the AUPA in a gender-neutral manner to determine if the spouse carried her burden of proving parentage under § 26-17-204(a)(4), Ala. Code 1975, or under § 26-17-204(a)(5), Ala. Code 1975.

On appeal, the spouse also argues that failing to extend the paternity provisions of the AUPA to same-sex couples would be inconsistent with the Fourteenth Amendment's equal protection and due process clauses. Although I find that argument to have validity, I do not address it because the language of the statute enables it to be constitutionally applied equally to same-sex couples.[2]

_____

[2]I note that in Smith v. Pavan, 505 S.W.3d 169, 177 & 178 (Ark. 2016), the Arkansas Supreme Court held that an Arkansas statute designating persons to appear on a child's birth certificate "pass[ed] constitutional muster" because "the statute center[ed] on the relationship of the biological mother and the biological father to the child, not on the marital relationship of husband and wife" and, consequently, did "not rule afoul of Obergefell [v. Hodges, 576 U.S. 644 (2015)]." The United States Supreme Court, in a per curiam opinion, summarily reversed the Arkansas Supreme Court's judgment, holding that such differential treatment of same-sex couples infringed upon "Obergefell's commitment to provide same-sex couples 'the constellation of benefits that the States have linked to marriage.'" Pavan v. Smith, ___ U.S. ___, ___, 137 S.Ct. 2075, 2077 (2017)(quoting Obergefell, 576 U.S. at 670). Observing that Arkansas used a birth certificate to give married parents a form of legal recognition, which they could use to

"'""We will not invalidate a statute on constitutional grounds if by reasonable construction it can be given a field of operation within constitutionally imposed limitations.'"" Lunsford v. Jefferson Cnty., 973 So. 2d 327, 330 (Ala. 2007) (quoting Town of Vance v. City of Tuscaloosa, 661 So. 2d 739, 742-43 (Ala. 1995) (other citation omitted))."

Magee v. Boyd, 175 So. 3d 79, 107 (Ala. 2015).

"'"[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law."'

"'[Alabama State Fed'n of Labor v. McAdory,] 246 Ala. [1,] 9, 18 So. 2d [810,] 815 (citation omitted). We must afford the Legislature the highest degree of deference, and construe its acts as constitutional if their language so permits. Id.'"

Kirby v. State, 899 So. 2d 968, 972-73 (Ala. 2004) (quoting Monroe v.

Harco, Inc., 762 So. 2d 828, 831 (Ala. 2000)).

Hanson, J., concurs.

---

enroll a child in school or to make medical decisions, that is not available to unmarried parents, the Supreme Court held that Arkansas could not, "consistent with Obergefell, deny married same-sex couples that recognition." Pavan, ___ U.S. at ___, 137 S. Ct. at 2079.